# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| JOHNNA LYDA, | Case No.: 3:20-cv-00106-RCJ-WGC |
| Plaintiff | **Order** |
| v. | Re: ECF Nos. 1, 1-1, 1-2 |
| RYAN GUSTAVSON, et. al., | |
| Defendants | |

Plaintiff has filed an application to proceed in forma pauperis (IFP) (ECF No. 1) and pro se complaint (ECF No. 1-1), as well as a motion to e-file those documents to Assistant District Attorney Courtney Leverty, and Ryan Sullivan or a judge in the federal court (ECF No. 1-2).

## I. IFP APPLICATION

A person may be granted permission to proceed IFP if the person "submits an affidavit that includes a statement of all assets such [person] possesses [and] that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1); *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc) (stating that 28 U.S.C. § 1915 applies to all actions filed IFP, not just prisoner actions).

The Local Rules of Practice for the District of Nevada provide: "Any person who is unable to prepay the fees in a civil case may apply to the court for authority to proceed [IFP]. The application must be made on the form provided by the court and must include a financial affidavit disclosing the applicant's income, assets, expenses, and liabilities." LSR 1-1.

"[T]he supporting affidavits [must] state the facts as to [the] affiant's poverty with some particularity, definiteness and certainty." *U.S. v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (quotation marks and citation omitted). A litigant need not "be absolutely destitute to enjoy the benefits of the statute." *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

A review of the application to proceed IFP reveals Plaintiff cannot pay the filing fee; therefore, the application will be granted.

## **II. SCREENING**

**A. Standard**

"[T]he court shall dismiss the case at any time if the court determines that-- (A) the allegation of poverty is untrue; or (B) the action or appeal-- (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(A), (B)(i)-(iii).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) tracks that language. As such, when reviewing the adequacy of a complaint under this statute, the court applies the same standard as is applied under Rule 12(b)(6). *See e.g. Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) ("The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim."). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

The court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*,

395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. Plaintiff's Complaint**

Plaintiff filed various documents to initiate this action. One of them appears to be a caption of a complaint although it appears to show Plaintiff as having her own court, at the "Federal District Court House" at 1 Sierra Street, Reno, Nevada. (ECF No. 1-1 at 7.) She names as defendants: Ryan Gustavson, Shannon McCoy, Courtney E. Leverty, Christopher J. Hicks, Rocio Lopez, Codi Soap, Cheryl Ruiz, Sharon Polka, Kate Thomas, Jacqueline Bryant, Y. Viloria, Muriel Skelly, Jennifer Jeans, and Amber Howe.

Substantively, Plaintiff states that she was the lawful guardian and paternal grandmother of Hailey and Hayden, and they were taken without her consent while on respite care. (ECF No. 1-1 at 2.)

Preliminarily, the court notes that Plaintiff's filings contain multiple indicia of her adherence to the "sovereign citizen" anti-government movement. As one court described it:

> Though the precise contours of their philosophy differ among the various groups, almost all antigovernment movements adhere to a theory of a 'sovereign' citizen. Essentially, they believe that our nation is made up of two types of people: those who are sovereign citizens by virtue of Article IV of the Constitution, and those who are 'corporate' or '14th Amendment' citizens by virtue of the ratifications of the 14th Amendment. The arguments put forth by these groups are generally incoherent, legally, and vary greatly among different groups and different speakers within those groups. They all rely on snippets of 19th Century court opinions taken out of context, definitions from obsolete legal dictionaries and treatises, and misplaced interpretations of original intent. One of the more cogent [—] in the sense that it is readily followed— arguments is that there were no United States citizens prior to the ratification of the 14th Amendment. All Americans were merely citizens of their own state and owed no allegiance to the federal government. As a result of that amendment, however, Congress created a new type of citizen—one who now enjoyed privileges conferred by the federal government and in turn answered to that government.
>
> One of the ramifications of this belief is the dependent belief that, unless one specifically renounces his federal citizenship, he is not the type of citizen originally contemplated by the Constitution. And, in their view, the Constitution requires all federal office holders to be the original or sovereign type of citizen, a state citizen rather than a United States citizen. As a result, all federal officers are holding office illegally and their laws and rules are thus constitutionally suspect.

*United States v. Mitchell*, 405 F.Supp.2d 602, 605 (D.Md. 2005) (internal citation and quotation marks omitted).

Other courts have described a similar theory based on the belief that passing the Fourteenth Amendment led to fictitious entities:

4

> Supposedly, prior to the passage of the Fourteenth amendment, there were no U.S. citizens; instead, people were citizens only of their individual states. Even after the passage of the Fourteenth Amendment, U.S. citizenship remains optional. The federal government, however, has tricked the populace into becoming U.S. citizens by entering into 'contracts' embodied in such documents as birth certificates and social security cards. With these contracts, an individual unwittingly creates a fictitious entity (*i.e.*, the U.S. citizen) that represents, but is separate from, the real person. Through these contracts, individuals also unknowingly pledge themselves and their property, through their newly created fictitious entities, as security for the national debt in exchange for the benefits of citizenship.

*Bryant v. Wash. Mut. Bank*, 524 F.Supp.2d 753, 758 (W.D. Va. 2007). "The attempt to divide oneself into two separate entities … is a legal fiction and has been struck down consistently in courts and around the country. *See Santiago v. Century 21/PHH Mortg.*, 2013 WL 1281776, at *5 (N.D.Ala. Mar. 27, 2013) (citing cases).

Plaintiff's filing makes it evident that she adheres to the same type of "sovereign citizen" theories that have been flatly rejected by this nation's courts. This court, like others across the country, concludes that "'sovereign citizens,' like all citizens of the United States, are subject to the laws of the jurisdiction in which they reside." *Paul v. New York*, 2013 WL 5973138, at *3 (E.D.N.Y. Nov. 5, 2013) (quotation marks and citations omitted). "[T]he conspiracy and legal revisionist theories of 'sovereign citizens' are not established law in this court or anywhere in this country's valid legal system." *Id*. (citation and quotation marks omitted); *see also United States v. James*, 328 F.3d 953, 954 (7th Cir. 2003) ("Laws of the United States apply to all persons within its borders."); *United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011) ("Regardless of an individual's claimed status of descent, be it as a 'sovereign citizen,' a 'secured-party creditor,' or a 'flesh-and-blood human being,' that person is not beyond the jurisdiction of the courts. These theories should be rejected summarily, however they are presented.").

With that said, the court will now determine whether Plaintiff states a colorable claim for relief. To the extent Plaintiff simply has a dispute regarding custody of her granddaughters, this should be addressed in the State's family court system. To the extent Plaintiff is asserting that she was the legal guardian of her granddaughters and that they were taken without due process, she may potentially have a claim.

"The Fourteenth Amendment guarantees that parents will not be separated from their children without due process of law except in emergencies." *Mabe v. San Bernardino County Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1107 (9th Cir. 2001) (citations omitted); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001) (citation, internal quotation marks and brackets omitted), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (*"*It is well established that a parent has a fundamental liberty interest in the companionship and society of his or her child and that the state's interference with that liberty interest without due process of law is remediable under 42 U.S.C. § 1983; *Wallis v. Spencer*, 202 F.3d 1126, 1137 (9th Cir. 2000)). A claim by parents regarding alleged unconstitutional removal of children is properly "assessed under the Fourteenth Amendment standard for interference with the right to family association" while a claim by the child who was seized is assessed under the Fourth Amendment. *Id.* at n. 8 (citations omitted). The "same legal standard applies in evaluating Fourth and Fourteenth Amendment claims for the removal of children[.]" *Id.*

This constitutional right is not absolute. *Mueller v. Auker*, 700 F.3d 1180, 1186 (9th Cir. 2012). "Under certain circumstances, these rights must bow to other countervailing interests and rights, such as the basic independent life and liberty rights of the child and of the State acting as *parens patriae*; and on occasion, this accommodation may occur without a pre-deprivation hearing." *Id.* at 1186; *see also Woodrum v. Woodward Cnty.*, 866 F.2d 1121, 1125 (9th Cir.

1989) ("The interest of the parents must be balanced against the interests of the state and, when conflicting, against the interests of the children."). The Fourteenth Amendment, then, "guarantees that parents will not be separated from their children without due process of law except in emergencies." *Mabe*, 237 F.3d at 1107; *Mueller*, 700 F.3d at 1187 ("constitutional rights of parents step aside [ ] [i]n an emergency situation when the children are subject to immediate or apparent danger or harm") (internal quotation marks and ellipses omitted).

The general standard for such a claim is:

> [O]fficials may remove a child from the custody of its parent without prior judicial authorization only if the information they possess at the time of the seizure is such as provides reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury.

*Wallis*, 202 F.3d at 1138.

Plaintiff does not include sufficient *factual* allegations for the court to conclude she states a federal constitutional claim under the Fourteenth Amendment. Nor does she include allegations with respect to each defendant named. Plaintiff's action will be dismissed with leave to amend. Plaintiff must include facts to set forth a colorable Fourteenth Amendment claim under the parameters set forth above, and must include sufficient facts to demonstrate what *each* named defendant did that violated Plaintiff's rights under the constitution. Plaintiff is advised that it is likely that if she elects to file an amended complaint and names the District Attorney Christopher J. Hicks or Special Assistant District Attorney Courtney Leverty they are likely to be dismissed because prosecutors have absolute immunity when performing the traditional function of an advocate. *See Imbler v. Pachtman*, 424 U.S. 409 (1976); *see also Kalina v. Fletcher*, 522 U.S. 118, 131 (1997); *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993).

### III. CONCLUSION

(1) Plaintiff's IFP application (ECF No. 1) is **GRANTED**. Plaintiff is permitted to maintain this action without prepaying the filing fee or giving security therefor. This order granting IFP status does not extend to the issuance of subpoenas at government expense.

(2) The Clerk shall **FILE** the complaint (ECF No. 1-1).

(3) The complaint is **DISMISSED WITH LEAVE TO AMEND.**

(4) Plaintiff has **30 DAYS** from the date of this Order to file an amended complaint correcting the deficiencies noted above. The amended complaint must be complete in and of itself without referring or incorporating by reference any previous complaint. Any allegations, parties, or requests for relief from a prior complaint that are not carried forwarded in the amended complaint will no longer be before the court. Plaintiff shall clearly title the amended pleading as "AMENDED COMPLAINT." If Plaintiff fails to file an amended complaint within the 30 days, the action may be dismissed.

(5) Plaintiff's request to have the complaint "e-filed" on certain defendants (ECF No. 1-2) is **DENIED**. It appears Plaintiff seeks is to have the documents served on certain defendants. The court will address service after the amended complaint is filed and screened. If Plaintiff wishes to utilize the court's electronic filing system, she must request the court's authorization to register as a filer under Local Rule 1C 2-1(b), and complete a registration form on the court's website: www.nvd.uscourts.gov.

Dated: March 24, 2020

_William G. Cobb_
William G. Cobb
United States Magistrate Judge